UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MAURICE POCHE KIRK,

          Petitioner,                  Case No. 1:15-cv-682

v.                                  Honorable Paul L. Maloney

DAVE FENBY,

          Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Maurice Poche Kirk is presently incarcerated with the Michigan Department of

Corrections at the Thumb Correctional Facility in Lapeer, Michigan. Petitioner is serving a term

of imprisonment of 18 to 33 years, imposed by the Muskegon County Circuit Court on December

12, 2012, after a jury convicted Petitioner of armed robbery, MICH. COMP. LAWS § 750.529. In

his *pro se* petition, Petitioner raises nine grounds for relief, which can be summarized as follows:

I.      Petitioner was deprived of state and federal rights to liberty and equal protection of the law where the magistrate judge for the 60th District Court authorized an arrest warrant that was based upon an unconstitutional felony complaint.

II.     Felony complaint and felony warrant both use conclusory language divesting the 60th judicial court and the 14th circuit court of Muskegon of subject matter jurisdiction. Petitioner's attorneys were ineffective in failing to object.

III.    Judge M. Wiewiora committed malfeasance in office where he authorized an arrest warrant even though the sworn declaration did not provide an adequate basis.

IV.    Trial court erred in failing to quash the information.

V.   Petitioner's 6th Amendment right to the effective assistance of counsel and his 14th Amendment right to due process were violated when neither of his attorneys investigated or even attempted to challenge the invalid arrest warrant and other irregularities.

VI.   Petitioner was deprived of his federal and state constitutional rights, privileges and immunities at the inception of the case where the issuing magistrate failed to conduct a "fair and impartial" probable cause hearing prior to issuance of the arrest warrant.

VII.   There was a fatal jurisdictional defect that entitles Petitioner to relief.

VIII.   Trial court did not obtain a valid waiver of Petitioner's state and federal constitutional rights to counsel prior to granting Petitioner's motion for self-representation.

IX.   Trial court plainly erred in denying Petitioner credit for time served in the instant case. The trial court likewise plainly erred in ordering that Petitioner's sentence in the instant case be served consecutively to the federal sentence for which he was on supervised release at the time of the commission of the instant state offense. Alternatively, trial counsel rendered ineffective assistance in failing to object.

(Pet., ECF No. 1, PageID.42-51.) Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they were procedurally defaulted or lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds raised are without merit. Accordingly, I recommend that the petition be denied.

## Discussion

I.   Factual allegations

On January 16, 2012, Petitioner Maurice Poche Kirk and Cameron Nelson visited Theretius Knight at his home at 760 Catawba, Muskegon, Michigan. (Trial Tr. II, ECF No. 8-6,

2

PageID.522-523.)[1]   Moments later, the three men were watching the Chicago Bulls game on television when three other men came through Mr. Knight's front door.  (*Id.*, PageID.527.)  The door had been left ajar by Mr. Nelson.  (*Id.*)  Mr. Knight knew two of the men, Jermaine Brown and Carlton Porter.  (*Id.*, PageID.525, 529.)  Mr. Brown put a gun to Mr. Knight's head and demanded money.  (*Id.*, PageID.530.)  Mr. Kirk and Mr. Nelson walked out the front door without a word to the robbers or Mr. Knight.  (*Id.*, PageID.530-531.)  Mr. Nelson came back into the home shortly after he left.  (*Id.*, PageID.533.)  Mr. Porter and the third man searched Mr. Knight's home while Mr. Brown held Mr. Knight at gunpoint.  (*Id.*, PageID.530.)  Mr. Brown grabbed Mr. Knight's cell phones and a PlayStation 3 game console.  (*Id.*, PageID.531.)  After all of the men left, Mr. Knight contacted the police.  (*Id.*, PageID.532.)

A police officer spotted Petitioner's vehicle.  (*Id.*, PageID.610-611.)   Officers followed the vehicle.  (*Id.*, PageID.610-613.)  Petitioner parked and left the vehicle.  (*Id.*, PageID.613.)  Officers on foot apprehended and arrested Petitioner.  (*Id.*, PageID.600, 613.)  Mr. Knight's PlayStation 3 game console was in the back seat of Petitioner's vehicle. (Trial Tr. III, ECF No. 8-8, PageID.640-642, 647-649.)

---

[1] The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

| | |
|---|---|
| February 1, 2012 Preliminary Exam. Transcript | (Prelim. Tr., ECF No. 8-2, PageID.___) |
| February 13, 2012 Arraignment Transcript | (Arraignment Tr., ECF No. 8-3, PageID.___) |
| October 15, 2012 Motion Hearing Transcript | (Mot. Tr. I, ECF No. 8-4, PageID.___) |
| October 22, 2012 Motion Hearing Transcript | (Mot. Tr. II, ECF No. 8-5, PageID.___) |
| October 23, 2012 Trial Transcript  (Volume 1) | (Trial Tr. I,  ECF No. 8-6, PageID.___) |
| October 24, 2012 A.M. Trial Transcript  (Volume 2) | (Trial Tr. II,  ECF No. 8-7, PageID.___) |
| October 24, 2012 P.M. Trial Transcript  (Volume 3) | (Trial Tr. III,  ECF No. 8-8, PageID.___) |
| October 25, 2012 A.M. Trial Transcript  (Volume 4) | (Trial Tr. IV,  ECF No. 8-9, PageID.___) |
| October 25, 2012 P.M. Trial Transcript  (Volume 5) | (Trial Tr. V,  ECF No. 8-10, PageID.___) |
| November 19, 2012 Sentencing Transcript | (Sentencing Tr. I,  ECF No. 8-11, PageID.___) |
| December 11, 2012 Sentencing Transcript | (Sentencing Tr. II,  ECF No. 8-12, PageID.___) |
| December 12, 2012 Sentencing Transcript | (Sentencing Tr. III,  ECF No. 8-13, PageID.___). |

Petitioner was represented by attorney Joseph Fisher at his preliminary examination. Based on Mr. Knight's preliminary examination testimony, Petitioner was bound over to circuit court on a charge of armed robbery. (Prelim. Tr., ECF No. 8-2, PageID.187.) Attorney Fred Lesica was appointed to represent Petitioner for the circuit court proceedings. (Arraignment Tr., ECF No. 8-3, PageID.194; Muskegon Cnty. Cir. Ct. Docket Sheet, ECF No. 8-1, PageID.144.) Petitioner expressed his desire to forego Mr. Lesica's representation and, instead, represent himself. (Mot. Tr. I, ECF No. 8-4, PageID.204.) Following an October 15, 2012 hearing, approximately one week before the scheduled trial, the trial court granted Petitioner's request. (*Id.*, PageID.242.) Petitioner did a creditable job representing himself at subsequent hearings and the trial. The jury was apparently sympathetic to his position;[2] however, following testimony from Mr. Knight, his sister, police officers involved in the investigation and in Petitioner's apprehension, and Mr. Nelson, it took the jury less than two hours to unanimously conclude that Petitioner was guilty of armed robbery.

Petitioner accepted the assistance of appointed counsel for his sentencing and accepted such assistance again for his direct appeal to the Michigan Court of Appeals. Counsel filed an appeal brief raising issues VIII and IX above. Petitioner supplemented counsel's effort with a Standard 4 brief[3] raising issues I-VII above. In an unpublished opinion dated July 10, 2014,

---

[2]After the verdict was announced, the court polled the jury. One juror reported that he considered the verdict to be unfortunate. (Trial Tr. V, ECF No. 8-10, PageID.912.) Another juror acknowledged that her verdict was guilty, but she was sad to reach that conclusion. (*Id.*) The prosecutor noted that a juror had informed him that the jury was sympathetic to Petitioner and felt unfortunate that they had to find him guilty. (Sentencing Tr. II, ECF NO. 8-12, PageID.950.) The trial judge noted that one of the jurors was crying as the verdict was announced. (*Id.*, PageID.951.)

[3] Standard 4 permits an appellant to file a brief *in propria persona* covering issues the appellant wants to raise on appeal even though his counsel does not. Mich. Admin. Order No. 2004-6.

the Michigan Court of Appeals affirmed the trial court, rejecting all of the arguments raised by Petitioner. (Mich. Ct. App. Op., ECF No. 8-14, PageID.979-990.)

Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same nine issues he had raised in the Michigan Court of Appeals. The supreme court denied leave to appeal by order entered February 3, 2015. (Mich. Ord., ECF No. 8-15, PageID.1118.) Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.39.) Instead, he filed his petition in this Court on June 23, 2015.

II.     AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly

established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    The complaint and the warrant
        (Habeas issues I-III, VI, and VII)

A criminal prosecution in the state of Michigan typically commences with a complaint, "a written accusation that a named or described person has committed a specified offense." MICH. CT. R. 6.101(A). A proper complaint, in turn, can provide the basis for the court to find probable cause to support the issuance of an arrest warrant. MICH. CT. R. 6.102. After the accused has been arrested, the court must arraign him, MICH. CT. R. 6.104, and thereafter conduct a preliminary examination to determine whether probable cause exists to believe that an offense has been committed and that the accused committed it, MICH. CT. R. 6.110. If the court so determines, the accused is bound over for trial in the circuit court, *id.*, and the prosecutor must file an information setting forth the substance of the accusation and, to the extent possible, the time and place of the alleged offense, MICH. CT. R. 6.112. The accused is arraigned again in the circuit court based on the information, MICH. CT. R. 6.113, the matter then proceeds through discovery and trial or entry of a plea, depending on the case.

Petitioner contends there were flaws in the complaint and the warrant so that the trial court never obtained jurisdiction over him. Accordingly, Petitioner contends, his conviction violates due process. The Michigan Court of Appeals rejected the premise of Petitioner's argument. That court concluded that there were no flaws in the complaint or warrant procedures:

> Kirk asserts that the trial court never obtained subject matter jurisdiction
> over the case because his arrest warrant was based on an unconstitutional complaint

that contained conclusory language, and the magistrate improperly authorized the warrant without probable cause or a hearing. We disagree with Kirk's assertions. Kirk premises his assertions on several misapprehensions of law.

First, Kirk contends that MCR 2.201(B) applies to criminal actions and requires the victim to bring the criminal action and sign the complaint. Kirk is incorrect.

MCR 2.201 is a rule of civil procedure. The rules of civil procedure do not apply in criminal actions "when it clearly appears that they apply to civil actions only[.]" MCR 2.201(A) states that "[t]he party who commences a civil action is designated as plaintiff and the adverse party as defendant." MCR 2 .201(B) then provides who may bring suits in specified types of civil actions. Thus, we conclude that MCR 2.201(B) is a rule of civil procedure that clearly applies to civil actions only, and does not apply in this case. Accordingly, the complaint was not deficient for failing to comply with MCR 2.201(B).

Second, our review of the complaint reveals that it contains all the necessary elements of a criminal complaint. Specifically, the complaining witness alleged that Kirk was involved in the armed robbery of Knight, that a gun was held to Knight's head during the robbery, and that officers found items that were reported stolen from Knight's home in Kirk's vehicle shortly after the robbery. The complaining witness signed the complaint. Neither statute nor court rule requires the complainant to be the victim. Further, the complaint is an accusation, and neither statute nor court rule precludes the complaint from containing conclusory language.

After reading the warrant and the underlying affidavit "in a common-sense and realistic manner," we conclude that the magistrate did not err when he found that the complaint provided probable cause to issue an arrest warrant. We conclude that neither the complaint nor the warrant were invalid. Accordingly, we reject Kirk's various assertions regarding the deficiency of the complaint and arrest warrant. Additionally, we note that even were we to accept Kirk's assertions, the trial court still had jurisdiction to try his case.

Third, Kirk contends that the complaint was not sufficient because the record regarding the warrant was not adequately preserved. We disagree.

MCR 6.102(B) allows the magistrate to rely on "the testimony of a sworn witness adequately preserved to permit review" to support a probable cause determination. But the magistrate may also rely on other sources. Here, there is no indication that the magistrate relied on oral testimony. Further, for the reasons described above, the factual allegations in the signed complaint itself were

sufficient to support the magistrate's probable cause determination. We therefore reject this argument.

(Mich. Ct. App. Op., ECF No. 8-14, PageID.987-988) (footnotes omitted).

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5.

Petitioner's challenges to the complaint and warrant derive not from the federal constitution, but from state law. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Thus, this Court is bound by the state court's determination that the complaint and warrant in Petitioner's case were sufficient.

This Court is also bound by the Michigan Court of Appeals' conclusion that the Muskegon County Circuit Court had jurisdiction over Petitioner and his criminal prosecution.

Specifically with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).

Even if there were some flaw in the complaint and warrant process, Petitioner would not be entitled to habeas relief. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction). The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction. *See Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinios*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (citing *United States v. Crews*, 445 U.S. 463, 474 (1980)). Accordingly, claims regarding procedural irregularities in his arrest (habeas issues I-III, VI, and VII), even if true, permit no habeas relief.

IV.     The information (Habeas issue IV)

Petitioner also challenges the information, claiming there was insufficient evidence presented at his preliminary examination to support the district court's conclusion that Petitioner had committed armed robbery. Essentially, Petitioner attacks the district court's probable cause conclusion following the preliminary examination in the same way he attacked the magistrate's

probable cause determination with respect to the arrest warrant. The Michigan Court of Appeals

rejected Petitioner's challenge:

> Kirk contends that the trial court erred when it failed to quash the information because, at the preliminary hearing, the prosecutor did not prove that Kirk committed the elements of armed robbery. We disagree.

> Knight testified at the preliminary examination. According to Knight, Kirk came to his house on January 16, 2012, to get a telephone number. Knight let Kirk and Nelson in through the front door. Knight believed that Kirk left the front door slightly opened after he entered. A few minutes later, three people entered. Knight recognized two of them as Kirk's friends. One person put a gun to Knight's head, asked him where the money was, and threatened to shoot him. Kirk and Nelson rose, walked past the three men, and left. No one said anything to them as they left. Nelson returned and helped the men take his property, before all the men left.

> The trial court determined that Knight's testimony established that a robbery happened and that Kirk aided and abetted it. The trial court reasoned that Kirk knew the robbers and that his behavior during the robbery was "quite curious for somebody who is ostensibly surprised when armed robbers show up." The trial court determined that Kirk "verified the coast was clear" and "left the door a little bit open."

> On the basis of Knight's testimony, the court could reasonably infer that someone else committed a robbery. Knight testified that three people entered his home, one held a gun to his head, and the others took his property. Thus, the prosecutor established that "the crime charged . . . was committed by some other person" because other people assaulted Knight while armed with a dangerous weapon, and they took his property while he was present. Knight also testified that he thought that Kirk left the front door open. Therefore, the testimony established the inference that Kirk "performed acts . . . that assisted the commission of the crime." Finally, Knight testified that after the robbers entered, Kirk got up and left the room without confrontation. Therefore, Knight's testimony about Kirk's behavior established the inference that Kirk knew that the three others intended to commit the crime when he assisted them.

> We conclude that the trial court did not abuse its discretion when it denied Kirk's motion to quash the information. Because the prosecutor was proceeding under an aiding and abetting theory, the prosecutor did not need to establish that Kirk personally held a gun to Knight's head or was present when the others robbed Knight. The prosecutor only needed to show that Kirk assisted someone else in robbing Knight, with the knowledge that the other person would do so.

(Mich. Ct. App. Op., ECF No. 8-14, PageID.989-990.)  In short, the Michigan Court of Appeals concluded there was probable cause to conclude that Petitioner committed the offense of armed robbery.

In Michigan, "the preliminary examination is solely a creation of the Legislature, i.e., it is a statutory right." *People v. Yost*, 659 N.W.2d 604, 606 (Mich. 2003); *see also* MICH. COMP. LAWS §§ 766.1–766.18.  There is no federal constitutional requirement for the type of probable cause determination made following a preliminary examination under the Michigan statutes and court rules.  *See Gerstein*, 420 U.S. at 119 ("[A] judicial hearing is not prerequisite to prosecution by information. . . . [A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."); *Dillard v. Bomar*, 342 F.2d 789, 790-91 (6th Cir. 1965) ("We do not find that the Supreme Court has ever held that an accused has a constitutional right to a preliminary hearing.  On the contrary, we construe the [Supreme Court's] opinions . . . as saying that an accused has no such constitutional right.  This Court has held that no such constitutional right exists.").  Accordingly, Petitioner's claim that there was an insufficient basis for him to be bound-over is not rooted in federal constitutional law and is not cognizable on habeas review.

V.     Ineffective assistance of counsel (Habeas issue V)

Petitioner contends his counsel rendered constitutionally ineffective assistance for failing to challenge the above-described deficiencies in the complaint and warrant.  The Michigan Court of Appeals concluded that because the complaint and warrant were sufficient, it could not

be ineffective assistance for counsel to fail to challenge them.  (Mich. Ct. App. Op., ECF No. 8-14, PageID.988.)

The clearly established federal law regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  In *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

As noted above, this Court is bound by the state court's determination that the complaint and warrant in Petitioner's case were sufficient.  *See* § III, *supra*.  Thus, an objection to the sufficiency of the complaint or warrant would have lacked merit.  Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel.  *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'")  "Omitting meritless arguments is neither professionally

unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Thus, the Michigan Court of Appeals' determination that Petitioner's attorneys were not ineffective for failing to raise meritless challenges to the complaint and warrant is neither contrary to, nor inconsistent with, clearly established federal law, and Petitioner is not entitled to habeas relief on his ineffective assistance claim.

VI.    Self-representation (Habeas issue VIII)

Just one week before trial, Petitioner's counsel, Fred Lesica, sought leave to withdraw and presented Petitioner's request to represent himself at trial. (Mot. Tr. I., ECF No. 8-4, PageID.204.) Petitioner now contends that the trial court should not have granted his request. Petitioner argues that the trial court should have recognized, from Petitioner's struggle with the concept of aiding and abetting liability, that Petitioner's request to represent himself was not knowing and intelligent. Petitioner further contends that the trial court should have known, based on Petitioner's request eight months earlier for an attorney other than Mr. Lesica, that Petitioner's request to represent himself was not unequivocal. According to Petitioner, the trial court should have inquired as to whether Petitioner would rather have substitute counsel.

The Michigan Court of Appeals disagreed:

The United States and Michigan Constitutions provide that an accused is entitled to counsel to assist in his or her defense. The defendant has a constitutional right to be represented by counsel at all critical stages in a criminal proceeding. But the defendant also has the right to represent him- or herself, and the trial court may not force a defendant to accept a lawyer.

Before the trial court may grant a defendant's request for self-representation, it should engage in "a methodical assessment of the wisdom of self-representation by the defendant" before determining that the defendant's waiver is knowing, intelligent, and voluntary. A defendant's waiver is effective when the

14

trial court fully apprises the defendant of the risks of self-representation, and he or she knowingly and voluntarily accepts them.

\*     \*     \*

Kirk contends that his waiver was not knowing, intelligent, voluntary, or unequivocal because the trial court did not ask whether he was actually requesting substitute counsel. We disagree.

Requests for self-representation and requests for substitute counsel are different proceedings, with different procedures and different implications. Regarding substitute counsel, an indigent defendant is not entitled to the attorney of his or her choice, or to have the trial court replace the originally appointed attorney on request. The trial court may appoint substitute counsel on a showing of good cause, and when substitution will not unreasonably disrupt the judicial process. Regarding waiving the right to counsel, the trial court must (1) determine whether the defendant's request is unequivocal; (2) ensure that the defendant's request is knowing, intelligent, and voluntary; (3) ensure that the defendant's self-representation will not disrupt, burden, or inconvenience the proceedings; and (4) advise the defendant of the charge, the maximum possible prison sentence, any mandatory minimum sentence, and the risks of self-representation.

Here, Kirk asked for substitute counsel over six months before he asked to represent himself. At the time he asked to represent himself, the trial court engaged in a lengthy discussion with Kirk about his rights and the dangers of self-representation. After an admirably thorough discussion in which the trial court methodically advised Kirk of the dangers of self-representation, ascertained Kirk's level of education and willingness to prepare to represent himself, asked whether Kirk had any questions, discussed his concerns with him, and even explained to him concepts of law, the trial court asked Kirk whether he still wished to waive his right to counsel. Kirk responded, "Most definitely."

None of Kirk's questions, answers, or statements indicated that he actually wished to request substitute counsel. We can find no authority requiring the trial court to explore whether a defendant would like to request substitute counsel before granting his or her request for self-representation. Under these circumstances, we conclude that the trial court did not clearly err when it found that Kirk knowingly, intelligently, and voluntarily waived his right of representation, and that his request was unequivocal.

Kirk also contends that his waiver was not effective because Kirk did not understand the concept and application of aiding and abetting. We reject this assertion.

15

A defendant's legal skills or technical legal knowledge is not relevant to whether he or she waived the right to be represented by counsel. Even taking Kirk's assertion as true, his ability to understand the legal theory of aiding and abetting is not relevant to whether his decision to represent himself was knowing, intelligent, and voluntary.

(Mich. Ct. App. Op., ECF No. 8-14, PageID.981-983) (footnotes omitted).

The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense. U.S. Const. amend. VI. At issue here is a corollary to that right, the right to self-representation. *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942) ("The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms."). The clearly established federal law regarding self-representation is expressed in two Supreme Court cases: *Faretta v. California* 422 U.S. 806 (1975) and *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152 (2000).

In *Faretta*, the Court found support for the right of self-representation in the structure of the Sixth Amendment right to the assistance of counsel:

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him" and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered

wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

*Faretta*, 422 U.S. at 819-21 (footnotes and citations omitted). Although the Court recognized a criminal defendant's right to self-representation, it acknowledged that the right was a qualified one. The Constitutional mandate to provide counsel to a criminal defendant is premised upon the fact that "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834. Because a criminal defendant representing himself relinquishes that benefit, his waiver must be "'knowingly and intelligently'" made. *Id.* at 835. Moreover, the right to self-representation must yield to "'the dignity of the courtroom.'" *Id.* at 834, n. 46. It is not a license to ignore the rules of procedure or engage in "obstructionist misconduct." *Id.*

In *Martinez*, 528 U.S. 152, the Supreme Court concluded that the right of self-representation did not extend to appeals. In reaching its conclusion, the Supreme Court commented on the scope of the right of self-representation established in *Faretta*, stating:

As the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must "'voluntarily and intelligently'" elect to conduct his own defense, and most courts require him to do so in a timely manner. He must first be "made aware of the dangers and disadvantages of self-representation." A trial judge may also terminate self-representation or appoint "standby counsel"- even over the defendant's objection - if necessary. We have further held that standby counsel may participate in the trial proceedings, even without the express

consent of the defendant, as long as that participation does not "seriously undermin[e]" the " appearance before the jury" that the defendant is representing himself. Additionally, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for the defendant that counsel would normally carry out. Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

*Martinez*, 528 U.S. at 161-162 (citations and footnote omitted).

In the federal courts within the Sixth Circuit, to ensure the defendant's choice to self-represent is voluntary and intelligent, courts are called upon to conduct an inquiry that covers the substance of the model inquiry set forth in 1 Bench Book for United States District Judges 1.02-2. *See United States v. McDowell*, 814 F.2d 245, 249-250 (6th Cir. 1987) ("[W]henever a federal district judge in this circuit is faced with an accused who wishes to represent himself in criminal proceedings, the model inquiry [set forth in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed. 1986),] or one covering the same substantive points along with an express finding that the accused has made a knowing and voluntary waiver of counsel, shall be made on the record prior to allowing the accused to represent himself."); *United States v. Bankston*, 820 F.3d 215, 223-24 (6th Cir. 2016) ("[I]n the post-*McDowell era*, we have required only that the questions be 'drawn from or substantially similar to, the model inquiry set forth in the [Bench Book],' rather than adhere literally to the recommended list of questions in the model inquiry."). The Sixth Circuit Court of Appeals has identified the relevant considerations to be "'the defendant's familiarity with the law, . . . the gravity of the charges and the dangers of self-representation,' and whether 'the defendant's decision to waive counsel is voluntary.'" *Bankston*, 820 F.3d at 224.

Neither the trial court nor the state appellate court referenced *Faretta* or *Martinez* in evaluating Petitioner's request to represent himself. Instead, the trial court relied on *People v. Anderson*, 247 N.W.2d 857 (Mich. 1976), and the court of appeals relied upon *People v. Adkins*, 551 NW.2d 108, 116-17 (Mich. 1996), and *People v. Williams*, 683 N.W.2d 597, 602 (Mich. 2004). Both *Adkins* and *Williams*, however, relied upon *Anderson* as well.

In *Anderson* the Michigan Supreme Court established three requirements that must be met before a criminal defendant in Michigan can proceed *pro se:*

> First, the request must be unequivocal . . . . Second, once the defendant has unequivocally declared his desire to proceed Pro se the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. . . . The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business.

*Anderson,* 247 N.W.2d at 859-60. The Michigan Supreme Court drew the requirements directly from the circumstances that swayed the *Faretta* Court to recognize the right of self-representation. *Id.* at 859 ("[T]he [*Faretta*] Court carefully noted the circumstances under which Faretta was deprived of his constitutional right to conduct his own defense. The circumstances, affirmatively shown by the record, involved a clear and unequivocal request, weeks before trial, by a literate, competent, and understanding individual.") Moreover, *Anderson* and MICH. CT. R. 6.005(D) call for the same type of inquiry required in the Sixth Circuit. *Adkins*, 551 N.W.2d at 118 ("We believe the substantial compliance test adopted by the United States Court of Appeals for the Sixth Circuit in *United States v McDowell*, 814 F 2d 245 (C.A.6, 1987), is an effective way to address the waiver of counsel issue. . . .We hold, therefore, that trial courts must substantially comply with . . .

*Anderson* and MCR 6.005(D).").  Thus, considering Petitioner's request for self-representation under *Anderson* is consistent with, and not contrary to, clearly established federal law.

Critically, the trial court's determination that "[Petitioner's] ability to understand the legal theory of aiding and abetting is not relevant to whether his decision to represent himself was knowing, intelligent, and voluntary" is entirely consonant with *Faretta*.  The *Faretta* majority explained:  "We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire*.  For his technical knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself."  *Faretta*, 422 U.S. at 836 (footnote omitted). Therefore, Petitioner has failed to demonstrate that the trial court's application of *Faretta* was unreasonable in any way.

Petitioner's claim that his waiver of counsel was not voluntary because he really wanted substitute counsel fares no better.  Petitioner's attempt to conflate his request for counsel other than Mr. Lesica, a request made at his circuit court arraignment in February of 2012, before Mr. Lesica had even been appointed, and his request to represent himself eight months later is disingenuous.

At Petitioner's circuit court arraignment, he asked the judge for a new attorney.  At that time, however, Petitioner was under the mistaken impression that his attorney for the district court proceedings, Joe Fisher, would continue to serve as his attorney for the circuit court proceedings.  (Arraignment Tr., ECF No. 8-3, PageID.193-194.)  The judge informed Petitioner that there would be a new appointment for the circuit court proceedings and indicated it would likely by Fred Lesica.  (*Id*.)  Petitioner noted that he would prefer attorney Brian Hosticka.  (*Id*.) The judge explained that he could not grant that request because, though Petitioner had "a

Constitutional right to have the effective assistance of counsel. . . . [Petitioner did not] have the Constitutional right to pick and choose the public defender [he wanted]." (*Id.*, PageID.195.) The judge went on to advise Petitioner:

> Sometimes you get lucky and you might get somebody else but I, I just can't guarantee it. . . .You probably don't have a conflict of interest . . . under certain limited circumstances there might be a reason for you to change your attorney . . . but I'm gonna have to evaluate the situation to see how it goes. I want you to know that I can't just assume right away that he won't be ineffective. I gotta see how it goes with you, OK?

(*Id.*, PageID.197-198.)

On October 15, 2012, when Petitioner's request to represent himself was considered by the trial court, Petitioner made no mention of ineffective assistance by Mr. Lesica or any problem with Mr. Lesica's representation. (Mot. Tr. I, ECF No. 8-4.) Petitioner offered no argument or factual support for a substitution of counsel. (*Id.*) He asked only to represent himself. (*Id.*) Because Petitioner never asked for substitute counsel, he is forced to argue that the judge should have inquired whether Petitioner, instead of pursuing self-representation, would rather have new counsel appointed. Petitioner suggests that, absent that inquiry, Petitioner's waiver of counsel cannot be considered voluntary. Petitioner's attempt to graft an entirely new inquiry on the self-representation colloquy finds no support in clearly established federal law.[4] The state court's determination that Petitioner knowingly, intelligently, voluntarily, and unequivocally waived his right to counsel is amply supported in the record. Petitioner's self-representation provides no basis for habeas relief.

---

[4] According to the Michigan Court of Appeals, there is no support in state law either. (Mich. Ct. App. Op, ECF No. 8-14, PageID.983) ("We can find no authority requiring the trial court to explore whether a defendant would like to request substitute counsel before granting his or her request for self-representation.").

VII.    Sentencing credits (Habeas issue IX)

Petitioner claims he should have been given 330 days of credit against his sentence for the time he was incarcerated before his sentence was imposed.  The trial court provided no credit.  (Sentencing Tr., ECF No. 8-13, PageID.976-977.)  Although the court did not explain its ruling with regard to credit at the time sentence was imposed, the statements of the court and Petitioner's counsel[5] suggest that Petitioner was sentenced as if he had been on parole when he participated in the armed robbery.  The Muskegon Circuit Court Docket indicates that Petitioner's sentence was ordered to be served consecutively to Petitioner's current parole sentence.

Petitioner was not on federal parole when he participated in the armed robbery. Petitioner was serving a term of supervised release at that time.  Petitioner's participation in the armed robbery constituted a violation of the terms of his supervised release.  *United States v. Kirk*, No. 1:03-cr-283 (W.D. Mich.) (Judgment, ECF No. 39, PageID.99) ("Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five (5) years… . The defendant shall not commit another federal state or local crime.").   Based on that violation, on January 25, 2012, this Court issued an arrest warrant for Petitioner.  *United States v. Kirk*, No. 1:03-cr-283 (W.D. Mich.) (Arrest Warrant, ECF No. 67, PageID.226)    According to the prosecutor, the federal government placed a hold on Petitioner as he awaited trial in the Muskegon County Jail.  (Appellee's Response Br. on Appeal, ECF No. 8-14, PageID.1065.)  The investigator who drafted the PSIR for Petitioner reported that Petitioner's federal parole officer had indicated that after imposition of the armed robbery sentence, Petitioner would be brought to federal court on his supervised release violation.  (*Id*., PageID.1064.)

---

[5] Petitioner requested the assistance of counsel for sentencing.  Attorney Brian Hosticka was appointed to represent Petitioner.

There were no further proceedings on the supervised release violation after Petitioner was sentenced in the Muskegon County Circuit Court. During Petitioner's first year with the Michigan Department of Corrections, he asked this Court to terminate his supervised release in light of the significant duration of his sentence. *United States v. Kirk*, No. 1:03-cr-283 (W.D. Mich.) (Letters, ECF Nos. 68, 69, PageID.227-229.) The Court granted that relief on February 14, 2017. (No. 1:03-cr-283, ECF No. 71, PageID.231.)

Petitioner seizes upon the erroneous description of his status (parole vs. supervised release) to attack (1) the trial court's failure to credit Petitioner for time served; and (2) the requirement that his state sentence be served consecutively to his federal parole sentence. The distinction between parole and supervised release has some significance with respect to the second issue, but no significance with respect to the first.

A.    <u>Sentence credit</u>

There is no inherent constitutional right to credit against a sentence for the time served in pretrial detention. *Grays v. Lafler*, 618 F. Supp. 2d 736, 747 (W.D. Mich. 2008) ("A prisoner has no right under the federal constitution to earn or receive sentencing credits.") It is entirely a creature of statute. In Michigan, the credits flow from MICH. COMP. LAWS § 769.11b: "Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing." *Id.* Before Michigan enacted its sentencing credit statute in 1966, criminal defendants in Michigan were not entitled to any credit against their sentence for the time they were held in jail before being sentenced. *Gray v. Harry*, No. 1:07-cv-246, 2010 WL 3885441, at *16 n.8 (W.D. Mich. Mar. 2, 2010).

The Michigan Court of Appeals rejected Petitioner's challenge because Petitioner did not fall within the terms of the statute:

> MCL 769.11b instructs the trial court to give sentencing credits to those defendants who serve time in jail before sentencing "because of being denied or unable to furnish bond . . . ." Outside of MCL 769.11b, a defendant does not have any right to sentencing credits. The reason that a parole violator is not entitled to sentencing credits is because the defendant is not denied release on the basis of the defendant's inability to furnish bond. A defendant on federal supervised release is prohibited from committing state crimes. A federal court reviewing a defendant's violation of supervised release conditions must follow the Federal Rules of Criminal Procedure that apply to probation revocation proceedings. A federal court may only release a person in custody who is accused of violating supervised release if the magistrate finds "by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community[.]"

> *     *     *

> Kirk contends that the trial court erroneously denied him sentencing credit because he was not actually on federal parole at the time that he was sentenced. Presuming, without deciding, that the trial court clearly erred when it found that Kirk was on parole rather than federal supervised release, we conclude that Kirk has not demonstrated plain error.

> We reach this conclusion because any such error did not affect the outcome of Kirk's proceedings. Kirk would not have been entitled to sentencing credits because of his federal supervised release status. A defendant is only entitled to sentencing credits if he or she is denied release because of an inability to furnish bond. As noted above, a defendant who has violated his or her supervised release is not entitled to be released from custody. Here, even had the trial court determined that Kirk was on supervised release rather than federal parole, Kirk would not have been entitled to sentencing credits. Kirk was not denied release because he was unable to furnish bond: he was denied release because of his commission of another offense in combination with his supervised release. No authority provides that the trial court is required to grant a defendant sentencing credits when he or she is on supervised release, particularly when that defendant would otherwise be in custody pending a hearing on whether to revoke his or her supervised release.

(Mich. Ct. App. Op., ECF No. 8-14, PageID.984) (footnotes omitted).

As this Court has stated repeatedly, Petitioner's entitlement to jail credit under MICH. COMP. LAWS § 769.11b is a question of state law.[6] As noted above, *see* § III supra, "a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson*, 562 U.S. at 5. Petitioner's contention that the state courts misapplied MICH. COMP. LAWS § 769.11b raises an error of state law. Because the state court's resolution of a state-law issue is binding on this Court, the state courts' rejection of Petitioner's state-law argument is axiomatically correct. The issue is simply not cognizable on habeas review.

## B.  Consecutive sentencing

In Michigan "'concurrent sentencing is the norm. A consecutive sentence may be imposed only if specifically authorized by statute.'" *People v. Williams*, 811 N.W.2d 88, 95 (Mich. Ct. App. 2011). Petitioner contends the trial court erroneously departed from the norm when it concluded that Petitioner's state sentence should be served consecutively to his federal parole sentence. The reference to a federal parole sentence suggests that the court justified its departure based upon MICH. COMP. LAWS § 768.7a(2), which states: " If a person is convicted and sentenced

---

[6] *Gray v. Curtin*, No. 1:09-cv-959, 2013 WL 6327824, at *11 (W.D. Mich. Dec. 5, 2013) ("Petitioner's assertion that he was entitled to jail credit under Mich. Comp. Laws § 769.11b is a question of state law."); *Pryor v. Smith*, No. 1:11-cv-739, 2011 WL 4036669, at *1 (W.D. Mich. Sep. 12, 2011) ("'Because Petitioner's claim challenges the interpretation and application of a state crediting statute, it is not cognizable on federal habeas review.'"); *Fisher v. Bell*, No. 2:09-cv-246, 2011 WL 8473009, at *6 (W.D. Mich. Jul. 13, 2011) ("Petitioner claims he was denied credit for the time spent in jail between arrest and sentencing on the new offenses. Petitioner cites MCL 769.11b . . . . This claim is a challenge to the application and interpretation of state law and should be deemed non-cognizable on habeas review."); *Weil v. Howes*, No. 1:07-cv-401, 2010 WL 3431660, at *3 (W.D. Mich. July 19, 2010) ("Petitioner's claim that the trial court erred by failing to give him credit [under Mich. Comp. Laws § 769.11b] for time served before sentencing is not cognizable on federal habeas review."); *Wiillavize v. Howes*, No. 1:09-cv-62, 2009 WL 4639483, at *3 (W.D. Mich. Dec. 2, 2009) ("Petitioner challenges the Michigan court's interpretation of state statutes governing sentence credit and parole. It is well-settled that state law issues are not cognizable on federal habeas review."); *Quinn v. Curtin*, No. 1:09-cv-983, 2009 WL 4021117, at *4 (W.D. Mich. Nov. 19, 2009) ("Petitioner's claim challenging the state court's interpretation of a state sentencing statute[, Mich. Comp. Laws § 769.11,] is not cognizable as a matter of federal habeas corpus review."); *Grays*, 618 F. Supp. 2d at 747 ("[T]he interpretation and application of state crediting statutes[, Mich. Comp. Laws § 769.11,] . . . is not cognizable on federal habeas review.").

to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense." *Id*. Petitioner notes that "supervised release" is not "parole;" therefore, consecutive sentencing was not authorized by the statute. After Petitioner applied for habeas relief, the Michigan Court of Appeals in *People v. Clark*, 888 N.W.2d 309 (Mich. Ct. App. 2016), validated his position, specifically holding that MICH. COMP. LAWS § 768.7a(2) does not authorize consecutive sentencing if the defendant was on federal supervised release instead of parole.

The Michigan Court of Appeals did not truly reject Petitioner's argument; the court evaded it altogether by looking to the substance of the sentence imposed rather than the words. The court of appeals relied upon the fact that the trial court did not actually hold off on commencing Petitioner's state sentence until after completion of his possible federal sentence for violating supervised release. Instead, "[t]he trial court commenced Kirk's sentence on the date of sentencing." (Mich. Ct. App. Op., ECF No. 8-14, PageID.985.) Because Kirk's sentence has not been served consecutive to any other sentence, the Michigan Court of Appeals concluded that "[t]he trial court did not plainly or obviously violate Michigan's concurrent sentencing rule." (*Id.*)

There is no inherent constitutional right to concurrent sentences instead of consecutive sentences. *See, e.g., Oregon v. Ice*, 555 U.S. 160, 171 (2009) ("All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal. To hem in States by holding that they may not equally choose to make concurrent sentences the rule, and consecutive sentences the exception, would make scant sense."). Thus, once again, this is purely a matter of state law; and, once again, the state court's conclusion that the sentence imposed is not consecutive within the meaning of

MICH. COMP. LAWS § 768.7a(2), is binding on this Court. Petitioner cannot prevail on a claim that his "consecutive" sentence is unconstitutional when the Michigan Court of Appeals has concluded that his sentence is not "consecutive."

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated: November 7, 2017      /s/ RAY KENT
               United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).